# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 97-6091EMSL

In re:                          *
                                *
Popkin & Stern,                 *
                                *
    Debtor.                     *
                                *      Appeal    from    the    United
States
Robert J. Blackwell, Liquidating Trustee    Bankruptcy Court for the
of the Popkin & Stern Liquidating Trust    Eastern District of Missouri
                                *
    Plaintiff-Appellee,          *           [UNPUBLISHED]
                                *
        v.                       *
                                *
Ronald U. Lurie,                *
                                *
    Defendant-Appellant.         *


Submitted: January 12, 1998
Filed: March 5, 1998


Before KRESSEL, William A. HILL, and SCOTT, Bankruptcy Judges.


KRESSEL, Bankruptcy Judge.

    Ronald U. Lurie appeals from the bankruptcy court's[1] order
reviving the plaintiff's

---

[1] The Honorable Karen M. See, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

judgment against him.  Because we agree with the bankruptcy court that nothing in the settlement agreement between the parties constituted a release or a satisfaction of that judgment, we affirm.

## BACKGROUND

This dispute goes back to the bankruptcy case of Popkin & Stern, a St. Louis law firm of which Lurie was a partner. Originally commenced on March 26, 1992, by an involuntary petition, Popkin & Stern converted the case to a case under chapter 11 and Blackwell was subsequently appointed the trustee.  On August 27, 1993, the bankruptcy court confirmed a plan proposed by Popkin & Stern.  That plan provided for the creation of a liquidating trust to collect Popkin & Stern's assets and distribute them to creditors pursuant to the terms of the plan.  The plan provided that Blackwell would be the trustee of the liquidating trust.

As part of his duties as the liquidating trustee, Blackwell sued Lurie and on October 20, 1994, the bankruptcy court entered a judgment in favor of Blackwell and against Lurie in the amount of $1,121,743.00.  Blackwell commenced another adversary proceeding against Lurie and his two adult children, Michael Lurie and Ryan Lurie, and a third adversary proceeding against Lurie's wife, Nancy F. Lurie.

During 1995, Blackwell, Lurie, Nancy Lurie, Michael Lurie, and Ryan Lurie came to a settlement of the two pending adversary proceedings and the judgment against Lurie.  It is that global settlement agreement dated September 13, 1995, which is the centerpiece of the dispute between the parties to this appeal.  The global settlement agreement provided that on the 30th day after the date upon which the approval order of the bankruptcy court was entered, there would be a closing at

which there would be a transfer of property and execution of all documents.  On October 19, 1995, the bankruptcy court approved the agreement.

However, it wasn't long before the parties were back in court and on November 21, 1995, the bankruptcy court extended the closing date so that it would occur no later than December 29 and tentatively set December 20, 1995, as the closing date. However, on

December 15, 1995, a hearing was held at which the bankruptcy court took testimony, received other evidence and subsequently made detailed findings of fact and conclusions of law on the record and in a written order dated January 18, 1996. While extremely lengthy and detailed, the thrust of the opinion is that Lurie and his wife Nancy Lurie could not close the global settlement agreement. In fact, there never was a closing.

Under Missouri law, judgment liens survive for only three years. Mo. Rev. Stat. § 511.360. Therefore, on September 26, 1997, Blackwell filed a motion for revival of judgment. The bankruptcy court scheduled a hearing and entered an order to show cause setting a hearing for October 20, 1997. Lurie filed a response to the motion on October 14, 1997, and a supplemental memorandum on October 20, 1997, but did not personally appear at the hearing.[2]

The court held a hearing on Blackwell's motion on October 20, 1997,[3] and on October 23, 1997, entered an order for revival of judgment. It is from this order that Lurie appeals.

**DISCUSSION**

---

[2] Neither the response nor the supplement memorandum have been made part of the record on this appeal. In fact, the appellant has not filed any sort of designation of record or provided the court with any record other than transcripts of hearings held on December 15, 1995, and April 16, 1996. His only attempt to create a record seems to be the attachment to his reply brief of an affidavit of Richard F. Huck, III, dated February 10, 1997--obviously, post-hearing evidence which is not part of the record on appeal.

[3] In his brief, Lurie complains in passing about the fact that the bankruptcy judge conducted the hearing by telephone from Kansas City. But, as part of the statement of issues recited in his memorandum, he does not make an issue out of the way that the hearing was conducted. Lurie had the opportunity to file two written responses to the motion which the bankruptcy court considered before entering its order.

While Lurie's arguments are lengthy and sometimes convoluted, they can be distilled to one point.  In spite of the fact that he was unable to perform and did not perform his obligations under the global settlement agreement, he claims that the settlement agreement,

releases him from any liability on the judgment. Paragraph V of the global settlement agreement provides for mutual releases among the parties "as of the Closing Date." Since the closing date is set in the agreement as being 30 days after court approval and that date has come and gone, Lurie argues that the release is effective notwithstanding that no closing was ever held and, in fact, the bankruptcy court found that Lurie was unable to perform his obligations under the agreement which would enable a closing to be held.

However, the final paragraph of section V explicitly provides that "the releases, and hold harmless provisions of this paragraph V. . .shall become automatically effective and enforceable without further action at the time of the Closing." And, in fact, a careful review of the global settlement agreement reveals that the parties' obligations are all tied to the actual closing, not a hypothetical closing date. The setting of the closing date is intended to be an indication of an obligation to close on or within a certain time, but has no independent effect of its own. Since Lurie never performed his obligations under the global settlement agreement, he cannot claim the benefit of the bargained-for release. See, Williams v. AgriBank, FCB, 972 F.2d 962, 967 (8th Cir. 1992) ("When one party to a settlement agreement refuses to comply with its terms, the other party can abandon the settlement and proceed on the original cause of action.") Campbell v. Shaw, 947 S.W.2d 128, 131 (Mo. Ct. App. 1997) ("When a party fails to perform according to the terms of a contract, it must be determined whether the breach is material. If the breach is material or if the breaching party's performance is a condition to the aggrieved party's performance, the aggrieved party may cancel the contract.") McKnight v. Midwest Eye Institute of Kansas City, Inc., 799 S.W.2d 909, 915 (Mo. Ct. App. 1990) ("The judgment gave effect to the principle that a material failure of one party to give performance gives the other party the

6

right to repudiate the contract." Quoting <u>Boten v. Brecklein</u>, 452 S.W.2d 86, 92 (Mo.1970). "It gives effect also to the cognate principle that a party who is the first to violate the contract by failure to give material performance may not claim its benefits.")

## CONCLUSION

We simply cannot agree with Lurie that he is entitled to the benefit of the release even though no closing was held and he did not perform and was unable to perform his obligations

under the global settlement agreement.  We therefore affirm the bankruptcy court's judgment and order of revival of judgment dated October 21, 1997, and entered October 23, 1997.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT.